UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INSIGNIA RESOURCES, LLC,<br><br>      **Plaintiff,**<br><br>v.<br><br>ML GROUP DESIGN & DEVELOPMENT, LLC,<br><br>      **Defendant.** | No. 2:23-CV-20663 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") filed by Defendant ML Group Design & Development, LLC ("ML Group"). ECF No. 5. This opinion is issued without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions and for the reasons set forth below, Defendants' Motion is **DENIED**.

### I.   BACKGROUND[1]

Plaintiff Insignia Resources, LLC ("Insignia") is a labor staffing firm that provides expert services in finding highly qualified workers to provide to its customers. Compl. ¶ 7. Insignia handles traditional "human resources" issues and otherwise manages its employees on behalf of its customers. *Id.* On or about July 14, 2021, Insignia entered into a Professional Services Agreement ("PSA") with ML Group, a design and development firm that offers architectural, interior design, construction, and asset management services. Compl. ¶¶ 8-9. For approximately two years, Insignia provided several of its professional employees to ML Group to perform architectural and design work pursuant to the PSA, and ML Group paid Insignia for their services. *Id.* ¶¶ 9-10. Specifically, Insignia staffed Diego Baeza, Oscar Skogsberg, Luis Hidalgo, Dimas Diaz, and Beatriz Moscosa (the "Insignia Employees") to ML Group. *Id.* ¶ 12. The Insignia Employees were located in Panama and worked for ML Group from Panama. *Id.* ¶ 13.

---

[1] The following facts, taken from the Complaint, are accepted as true for the purpose of this Opinion. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

1

On the evening of July 30, 2023, ML Group sent a written notice to Insignia purporting to terminate the PSA with 60 days' notice pursuant to § 5.3 of the PSA, which stated that either party could terminate the PSA without cause "upon 60 days written notice to the other party." *Id.* ¶¶ 11, 16. The next day, Insignia's Director of Operations, Marjorie Zapata, met with the Insignia Employees in person to inform them that ML Group had decided to terminate the PSA and to reassure them that Insignia would reassign them to a growing project with another Insignia customer. *Id.* ¶ 17. Mr. Diaz, speaking on behalf of all of the Insignia Employees, informed Ms. Zapata that they knew that ML Group was planning to terminate the PSA and had plans to open its own Panama office. *Id.*

The next morning, on August 1, 2023, the Insignia Employees simultaneously presented their notices of resignation to their Insignia Account Manager. *Id.* ¶ 18. At this meeting, the Insignia Employees informed the Account Manager that they had all obtained direct employment from ML Group in advance of their resignations. *Id.* The Insignia Employees each provided 15 days' notice, the minimum required under Panama law. *Id.* ¶¶ 19-20. Later that morning, Ms. Zapata met with Mr. Diaz separately and asked why the Insignia Employees could not remain at Insignia for the rest of ML Group's 60-day notice period and join ML Group once the period expired. *Id.* ¶ 21. Mr. Diaz informed Ms. Zapata that ML Group's job offer began prior to the 60-day notice period and that they could not risk losing the "unique opportunity" of joining ML Group. *Id.* Mr. Diaz then stated that he could not provide any further information because he, along with the other Insignia Employees, had signed written confidentiality agreements that prohibited them from discussing the details of their job offers or employment with ML Group. *Id.* ¶ 22.

The following day, on August 2, 2023, Insignia's Site Director, Moises Hafez, met with Mr. Diaz and Mr. Baeza and informed them that ML Group was in breach of the PSA. *Id.* ¶ 24. Then, in an attempt to have the Insignia Employees remain at Insignia for the remainder of ML Group's 60-day notice period under the PSA, Mr. Hafez offered the employees a significant pay increase. *Id.* Mr. Diaz and Mr. Baeza committed to discussing the offer with the rest of the Insignia Employees. *Id.* ¶ 25. Later that day, Mr. Diaz, communicating to Mr. Hafez on behalf of all of the Insignia Employees, rejected Insignia's offer because they "feared and understood" that if they remained employed with Insignia for the rest of the 60-day notice period, ML Group would rescind their job offers. *Id.* ¶ 26. Insignia asserts that immediately after the Insignia Employees' notice period terminated on or about August 15, 2023, each of them commenced direct employment with ML Group despite the PSA still being in effect. *Id.* ¶ 27. Insignia also alleges that ML Group has not paid Insignia for the services of the Insignia Employees after August 15, 2023. *Id.* ¶ 28.

## II. PROCEDURAL HISTORY

Insignia filed this action on August 29, 2023 in the Superior Court of New Jersey, Law Division, Essex County. Notice of Removal ¶ 1, ECF No. 1. On September 26, 2023, ML Group timely removed the action based on this Court's diversity of citizenship

jurisdiction pursuant to 28 U.S.C. § 1332.[2] *Id.* ¶ 5. Insignia alleges four causes of action against ML Group: (1) breach of contract; (2) tortious interference with contract; (3) tortious interference with business relations; and (4) breach of the covenant of good faith and fair dealing. The PSA contains a valid New Jersey venue selection provision and is governed by Delaware law under an unambiguous choice of law provision.[3] PSA § 11.7, Walsh Cert. Ex. A, ECF No. 5-3. ML Group now moves to dismiss the Complaint. Mov. Br., ECF No. 5. Insignia filed an opposition brief on November 6, 2023. Opp. Br., ECF No. 7. ML Group filed a reply brief on November 13, 2023. ECF No. 9.

## III. LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotation marks omitted). The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This facial-plausibility standard is met where the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

ML Group contends that Insignia's Complaint should be dismissed in its entirety because Insignia has failed to properly state each of its claims. The Court will address each cause of action in turn.

### A. Breach of Contract

In its first cause of action, Insignia alleges that ML Group breached the PSA by not paying for the services of the Insignia Employees after August 15, 2023. Compl. ¶¶ 28, 34-36. But for this breach, Insignia alleges, "ML Group would not have been in a position to terminate the [PSA], which would therefore have continued indefinitely." *Id.* ¶ 37. In moving to dismiss this claim, ML Group argues that Insignia has not sufficiently pleaded that (1) Insignia satisfied its obligations under the PSA and (2) that ML Group breached its

---

[2] Insignia is a Delaware corporation with its headquarters and principal place of business in New York. *Id.* ¶ 5(a). ML Group is a North Carolina corporation with its headquarters and principal place of business in Illinois. *Id.* ¶ 5(b). The complaint contemplates an amount in controversy over $75,000.

[3] *See Catalent, Inc. v. Danby*, No. 320CV12368, 2020 WL 13856504, at *5-7 (D.N.J. Nov. 2, 2020).

own respective obligations under the PSA. Mov. Br. 5. Specifically, ML Group asserts that Insignia stopped providing staffing services after August 15, 2023, and thus, it was no longer obligated to pay fees to Insignia under § 5.4(a) of the PSA. Mov. Br. 6.

"Under Delaware law, plaintiffs must establish the following three elements to succeed on a breach of contract claim: (1) the existence of a contract, . . . ; (2) breach of one or more of the contract's obligations; and (3) damages resulting from the breach." *GEICO Gen. Ins. Co. v. Green*, 276 A.3d 462 (Del. 2022). "A party need not plead cognizable damages as an element of a claim for breach of contract because the court can vindicate a breach of contract through an award of nominal damages." *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 456 (Del. Ch. 2023) (citation and quotation marks omitted). First, ML Group has not cited to—and the Court has not identified—any authority requiring Insignia to affirmatively plead that it performed its own obligations under the contract in order to state a claim for breach of contract. *See Zinetti v. Deutsche Bank Nat'l Tr. Co.*, No. CV 19-1279, 2020 WL 409725, at *9 (D. Del. Jan. 24, 2020); *see also Jackson v. Meta Platforms, Inc.*, No. CV 22-364, 2023 WL 2537003, at *2 & n.3 (D. Del. Mar. 16, 2023) (listing plaintiff's performance as an element for a breach of contract claim under California law, but not under Delaware law). Further, PSA § 5.4(a) allows a party to terminate the contract for cause if the other party materially breaches the agreement and receives written notice from the non-breaching party of such breach. Insignia has not alleged that it received such notice from ML Group. Opp. Br. 8. "The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case." *United States v. Bacara Partners, LLC*, No. CIV.A. 10-354, 2011 WL 98809, at *2 (D. Del. Jan. 10, 2011) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993)). ML Group's explanation for its failure to pay Insignia past August 15, 2023 relates to a factual, rather than legal, dispute regarding the sufficiency of the Complaint. Accepting Insignia's factual allegations as true, as the Court must do at this stage, Insignia has sufficiently pleaded (1) the existence of the PSA; (2) that ML Group breached its obligation to provide payments to Insignia during the entire term of the PSA; and (3) that Insignia was damaged by the breach. Thus, Insignia has adequately stated its breach of contract claim.

### B. Tortious Interference with Contract

ML Group next asserts that Insignia fails to state a claim for tortious interference with a contract. Insignia entered into separate employment agreements ("Employment Agreements") with each of the Insignia Employees. Compl. ¶ 41. The Employment Agreements provide that each employee shall "abstain from starting or maintaining a work relationship with another employer during the validity of the present employee contact." *Id.* ¶ 15. Insignia alleges that ML Group knew about the Employment Agreements and

4

induced the Insignia Employees to terminate their agreements during the term of the PSA so that ML Group could circumvent its 60-day notice obligation. *Id.* ¶¶ 42-43.

"Under Delaware law, to prevail on a tortious interference claim, a plaintiff must show that the defendant knew of a contract involving the plaintiff, intentionally and improperly interfered with it, and was a significant factor in causing the contract to be breached or otherwise terminated." *Cousins v. Goodier*, 283 A.3d 1140, 1160 (Del. 2022). ML Group first argues that Insignia fails to allege that ML Group had "concrete knowledge, no less any knowledge," of the Employment Agreements. Mov. Br. 7. Knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). Thus, Insignia must plead facts that allow for a reasonable inference of knowledge. *See Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 525 (D.N.J. 1998). Insignia pleaded that the Insignia Employees (1) had advance notice of ML Group's intent to terminate the PSA; (2) simultaneously resigned from Insignia; (3) received employment offers from ML Group; (4) signed confidentiality agreements with ML Group regarding their job offers; and (5) feared that ML Group would rescind their offers if they remained at Insignia until the end of the 60-day notice period. These facts allow for a reasonable inference that ML Group knew of the Employment Agreements and coordinated the timing of the Insignia Employees' resignations to take place within the temporal confines of the Employment Agreements and the PSA.

ML Group also contends that Insignia failed to allege that the Insignia Employees breached their Employment Agreements because the employees properly gave 15 days' notice of their resignations. Mov. Br. 8. However, a breach of contract is not required for a claim of tortious interference. *ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749, 751 (Del. 2010). The focus is on "the defendant's wrongful inducement of a contract termination, not upon whether the termination itself was legally justified." *Id.* (emphasis omitted). As stated *supra*, the facts alleged by Insignia allow for a reasonable inference that ML Group not only knew about the Employment Agreements, but induced the Insignia Employees to terminate them during the term of the PSA so that ML Group could circumvent its 60-day notice obligation. *See* Compl. ¶ 43.

Lastly, ML Group argues that Insignia failed to sufficiently allege damages caused by ML Group's purported interference. Mov. Br. 8. *See WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (listing injury as an element of a tortious interference claim). Specifically, ML Group disputes Insignia's claim that ML Group caused it damage by forcing Insignia to incur significant replacement costs for the Insignia Employees that would not otherwise be associated with replacing unskilled workers or low-level staff. Compl. ¶ 31. Because the Insignia Employees were at-will employees, ML Group posits that Insignia would have incurred replacement costs when the employees inevitably sought alternative employment, irrespective of any alleged interference by ML Group. Mov. Br. 8. However, at-will contracts do not preclude claims for tortious interference with a contract, Restatement (Second) of Torts § 766 cmt. g (1979)

5

(noting that a defendant may not improperly interfere with an at-will contract), and damages for a tortious interference claim are not limited to replacement costs, *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, No. CIV.A. 3718, 2010 WL 338219, at *27 (Del. Ch. Jan. 29, 2010) (holding that damages for tortious interference with a contract may be measured in terms of the tortfeasor's unjust enrichment arising from the interference); Restatement (Second) of Torts § 774A cmts. a & d (1979) (contemplating recovery for consequential harms and punitive damages). Further, Insignia's prayer for relief is not limited to replacement costs. *See* Compl. at 9-10, Opp. Br. 12 n.5. Accordingly, Insignia has sufficiently stated its claim.

### C. Tortious Interference with Business Relations

Insignia next alleges that ML Group tortiously interfered with Insignia's prospective business relations with its current and prospective customers. Compl. ¶ 46. "Under Delaware law, the elements of tortious interference with business relations are: (1) reasonable probability of business opportunity; (2) intentional interference by defendant with that business opportunity; (3) proximate causation; and (4) damages." *Preston Hollow Cap. LLC v. Nuveen LLC*, No. CV 2019-0169, 2020 WL 1814756, at *12 (Del. Ch. Apr. 9, 2020). ML Group argues that Insignia has failed to state a reasonable probability of a business opportunity. Mov. Br. 9. The day after receiving ML Group's 60 days' notice of its intent to terminate the PSA, Insignia alleges that it met with the Insignia Employees and reassured them that they would be reassigned to a "growing project with another Insignia customer." Compl. ¶ 17. ML Group maintains that Insignia fails to allege any details regarding the project's likelihood of success beyond speculation, such as whether the customer had inquired about additional resources, whether Insignia had already promised additional resources to the customer, or whether the Insignia Employees expressed interest in being reassigned to the project. Mov. Br. 9.

Ultimately, "[t]he 'existence of . . . a business expectancy is a question of fact not suitable for resolution [on a motion to dismiss].'" *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, No. CV 11141, 2016 WL 5243950, at *12 (Del. Ch. Sept. 22, 2016) (quoting *Gill v. Del. Park, LLC*, 294 F. Supp. 2d 638, 646 (D. Del. 2003)). However, to "plead a reasonable probability of a business relationship, the plaintiff must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm." *You Map, Inc. v. Snap Inc.*, No. CV 20-00162, 2021 WL 106498, at *9 (D. Del. Jan. 12, 2021) (quotation marks and alterations omitted) (quoting *Agilent Techs., Inc. v. Kirkland*, No. CIV.A. 3512, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009)). "The plaintiff need not name specific parties, but it must plead facts to allow the court to 'reasonably infer that specific parties were involved.'" *Id.*

Here, Insignia alleged that it reassured the Insignia Employees that they would be reassigned to the growing project the day after it received ML Group's intent to terminate the PSA. Compl. ¶ 17. Insignia's prompt action provides a reasonable inference that Insignia had already negotiated and agreed upon a project with a specific party that was growing at a fast enough pace to allow Insignia to immediately commit to staffing all five Insignia Employees to it. These facts are not the generalized allegations that have found to be too speculative by Delaware courts. *See GWO Litig. Tr. v. Sprint Sols., Inc.*, No. CV N17C-06-356, 2018 WL 5309477, at *12-13 n.137 (Del. Super. Ct. Oct. 25, 2018) (finding allegation that plaintiff had a "reasonable probability of business opportunities with retail customers and existing landlords" to be too generalized); *Biomeme, Inc. v. McAnallen*, No. CV N19C-12-079, 2021 WL 5411094, at *5 (Del. Super. Ct. Nov. 10, 2021) (finding that plaintiff failed to state a claim in part because no information was alleged on the stage of negotiations or the reality of the relationship). Accordingly, Insignia has pleaded facts that allow the Court to sufficiently infer a reasonable probability of a business opportunity in support of this claim.

### D. Breach of the Covenant of Good Faith and Fair Dealing

Lastly, Insignia alleges that ML Group's conduct breached its implied obligation of good faith and fair dealing towards Insignia. Compl. ¶ 51. Specifically, Insignia alleges that ML Group frustrated the essential purpose of the PSA by using Insignia's services as a headhunting firm, rather than as a staffing company. *Id.* "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 458 (Del. Ch. 2023) (quoting Restatement (Second) of Contracts § 205 (1981)). This covenant is "used to infer contract terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) (citation and quotation marks omitted). "It applies when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected. . . . at the time of contracting." *Id.* (citations and quotation marks omitted). "Thus, parties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citation omitted).

In moving to dismiss Insignia's claim, ML Group argues that it complied with the explicit provisions of PSA § 5.3 by providing 60 days' notice of its intent to terminate the PSA and by sending monetary deposits to Insignia that covered the cost of the Insignia Employees through August 31, 2023, even though Insignia only provided staffing services through August 15, 2023. Mov Br. 11; Reply Br. 8. Because the termination of the PSA

was foreseeable and pursuant to an express term, ML Group contends that their motive is irrelevant. Reply. Br. 8. However, contrary to ML Group's assertions, at issue here is not whether ML Group abided by the express terms of the PSA, but whether the PSA's "overarching purpose" was frustrated by ML Group's direct employment of the Insignia Employees. The PSA does not appear to contain any provision regarding the opportunity for ML Group to offer direct employment to the Insignia Employees. Thus, there is a gap in the PSA regarding the conduct at issue.

"To prevail on an implied covenant claim, a plaintiff must prove a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff. Those elements parallel a claim for breach of an express contract provision, except that the operative provision is implied." *Cygnus Opportunity Fund, LLC*, 302 A.3d at 458 (citation and quotation marks omitted). Insignia has sufficiently alleged the breach of two implied covenants in the PSA. First, it has alleged facts suggesting that the PSA contained an implied covenant that Insignia would provide expert staffing solutions and "back office" administrative functions for employees staffed to ML Group while ML Group paid Insignia for their ongoing services. Compl. ¶¶ 2, 9-10. Insignia alleges that ML Group breached this implied covenant and damaged Insignia by directly employing the Insignia Employees during the term of the PSA and "utilizing Insignia's services as a headhunting firm, rather than a staffing company," without paying a fee that is commensurate with headhunting services. *Id.* ¶¶ 3, 51. Additionally, in response to ML Group's assertions that it complied with the explicit terms of PSA § 5.3, Insignia argues that ML Group nonetheless violated the PSA's implied covenant that the parties would receive 60 days' notice before the PSA was terminated without cause by (1) hiring the Insignia Employees; and (2) failing to pay Insignia for the employees' services after August 15, 2023. Opp. Br. 14-15; Compl. ¶¶ 27-29. Accordingly, this claim remains.

## V.  CONCLUSION

For the reasons set forth above, ML Group's Motion, ECF No. 5, is **DENIED**. An appropriate Order accompanies this Opinion.

WILLIAM J. MARTINI, U.S.D.J.

Date: February 15, 2024